# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| HEATHER MILLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4: 19 CV 1693 DDN ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying in part the application of plaintiff Heather Miller for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born on June 5, 1980. She was 34 years old at the time of her amended alleged onset date of August 19, 2015. (Tr. 40, 177.) She filed her application on July 11, 2016, claiming disability due to degenerative disc disease, Type I diabetes, nerve damage to legs and feet, pancreatitis, lower back pain, migraines, carpal tunnel syndrome, and polymyositis. (Tr. 198.) Her application was denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 116-20, 123-24.)

On November 8, 2018, following a hearing, an ALJ issued a decision awarding benefits, based on the finding that plaintiff became disabled as of March 22, 2018, and continued to be disabled through the date of the decision. (Tr. 16-29.) The Appeals Council

denied her request for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to her appeal.

During the period from August 19, 2015 to February 22, 2018, plaintiff saw her primary care physician, Kyle Ostrom, M.D., two to four times per month for diabetes, polyneuropathy, retinopathy, and other conditions. During a March 22, 2018 appointment, Dr. Ostrom noted that plaintiff's diabetes remained poorly controlled despite significant changes in diet and she required large quantities of insulin to treat her symptoms. In addition to long-acting insulin, plaintiff had begun taking short-acting insulin on an hourly basis. (Tr. 3083-84.) In June 2018, Dr. Ostrom completed a form indicating plaintiff injected insulin on an hourly basis. (Tr. 3303-04.)

On September 9, 2015, plaintiff saw Patricia Gant, R.N., to set up a new glucometer. (Tr. 786.) From January 19 through May 11, 2016, plaintiff saw Ms. Gant approximately every two weeks for diabetes treatment. (Tr. 584, 587-88, 592-93, 595-97, 620, 628-30, 635-36, 644-45.)

On October 12, 2015, plaintiff was seen in the emergency department for shortness of breath and a rapid heart rate. (Tr. 776-80.)

Plaintiff was hospitalized December 3-9, 2015, for abdominal pain and pancreatitis. (Tr. 710-60.) On December 19, 2015, she was seen again in the emergency department for abdominal pain. (Tr. 701-06.)

On December 24, 2015, plaintiff was hospitalized for two days for intractable nausea and vomiting. (Tr. 662-99.) She was seen in the hospital for vomiting again on January 8 and 27, and March 2, 2016. (Tr. 638-42, 653-60.)

On April 26, 2016, plaintiff was seen in the emergency department for treatment for an abscess on her forearm. (Tr. 589-92.)

2

About one year later, on April 27, 2017, plaintiff was treated in the emergency department for high blood sugar. (Tr. 1956-78.)

From January through March 2016, plaintiff received IV fluids to prevent dehydration at a hospital infusion center approximately eleven times. (Tr. 598, 605, 622-23, 628, 630-34, 637, 642-43.)

On January 24, 2017, plaintiff saw A. Elbendary, M.D., for an adnexal mass (growth near the female reproductive system). She decided to undergo a hysterectomy performed by Dr. Elbendary on February 6, 2017. (Tr. 1848-49, 1854-55.) She was seen for postoperative follow-up from February through May 2017. At her final postoperative visit on May 10, 2017, Dr. Elbendary noted plaintiff's incisions had "finally" healed and she could resume her previous activities. (Tr. 1864-70.)

On July 26, 2017, plaintiff saw Thomas Riechers, M.D., for a ventral hernia (bulge in abdominal wall muscles). She underwent a hernia repair by Dr. Riechers on August 3, 2017. At a follow-up on August 16, 2017, Dr. Riechers noted plaintiff was recovering normally. (Tr. 1942-43, 2207-17, 2228-29.)

The ALJ requested assistance from agency medical expert, Charles Murphy, M.D. to evaluate plaintiff's impairments. (Tr. 3305-15.) In July 28, 2018 responses to interrogatories, Dr. Murphy indicated that plaintiff's impairments included diabetes mellitus, peripheral neuropathy, obstructive sleep apnea, chronic kidney disease (stage 1), degenerative disc disease, a history of pancreatitis, mixed connective-tissue disease, muscle tear of the left leg, and carpal-tunnel syndrome. (Tr. 3313.)

Dr. Murphy also completed a medical source statement (MSS) to assess plaintiff's functional abilities. He opined that plaintiff could frequently lift and carry up to 10 pounds. She could sit for 6 hours and stand or walk 4 hours total during a workday. Plaintiff did not have reaching, handling, or fingering limitations. She could occasionally operate foot controls. Dr. Murphy also assessed postural and environmental limitations. She could occasionally climb stairs, ramps, ladders or scaffolds, and stoop, crouch and crawl. She could frequently balance and kneel. (Tr. 3306-11.)

**ALJ Hearing**

On May 23, 2018, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 35-67.) She has past work experience as an assistant manager at a fast-food restaurant, as a certified nurse's assistant in a nursing home, and as a cashier at Casey's. She left her most recent job as an assistant manager at Burger King because she was sick and missing too much work. She was unsure whether she resigned from the job or was terminated. She is unable to work because she cannot sit for longer than fifteen minutes and can walk only 100 yards. (Tr. 42-44.)

She cannot work due to back, arm, and leg pain. Her fingers go numb five or six times per day, and she has severe stomach pain. She injects insulin every hour. (Tr. 44-46, 56-57.)

She does not do much on a typical day. She wakes up, takes her blood sugar, eats breakfast, and then sits around for most of the day. She can perform her own hygiene needs. She does not do any chores around the house; her mother and husband do most of the work, including taking care of their dog. In 2017, since her alleged onset date, she traveled by car to Indianapolis and Colorado Springs on two separate occasions for family visits. (Tr. 48-54.)

A vocational expert (VE) testified to the following at the hearing. Plaintiff has past relevant work as a fast food manager and cashier, both classified as light, and as a CNA, classified as medium. The ALJ asked the vocational expert to consider a hypothetical claimant who could perform sedentary work. She could frequently finger and handle, and occasionally balance, stoop, kneel, crouch, crawl, or climb stairs. The hypothetical claimant could not operate foot controls and had to avoid unprotected heights and moving mechanical parts. The VE testified that the hypothetical claimant could perform the jobs of optical goods assembler and touch-up circuit-board worker. The vocational expert testified that a worker who was off-task 15% of the time--in addition to normal breaks--could not perform any work in the national economy. (Tr. 60-64.)

Plaintiff's counsel then described a hypothetical claimant who would be absent from work two times per month on a regularly scheduled basis.  The VE testified that this hypothetical employee could not maintain work.  (Tr. 65.)

### III.  DECISION OF THE ALJ

On November 8, 2018, the ALJ issued a decision finding plaintiff disabled as of March 22, 2018, and that she met the Title II insured status through December 31, 2018. (Tr. 16-29.)  At Step One of the sequential evaluation, the ALJ found that plaintiff had not performed substantial gainful activity during the relevant period.  At Step Two, the ALJ found that plaintiff had the severe impairments of Type I diabetes with peripheral neuropathy, chronic kidney disease with diabetic retinopathy, lumbar degenerative disc disease, obesity, obstructive sleep apnea, pancreatitis, hernia repaired by surgery, connective tissue disease with tendonitis and a history of carpal tunnel release, left foot hammertoe, and right foot capsulitis and hammertoe.  At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equals an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 18-20.)

The ALJ found that prior to March 22, 2018, plaintiff had the residual functional capacity (RFC) to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a) with limitations.  She could not operate foot controls with the left or right foot, could only occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds, and only occasionally balance, stoop, kneel, crouch, or crawl.  She could frequently finger and handle bilaterally.  She could not work around unprotected heights or around moving mechanical parts.  Beginning March 22, 2018, however, plaintiff would be off task for 15% of the workday, in addition to normal breaks, in order to prepare and inject insulin every hour. (Tr. 21-26.)

At Step Four, the ALJ determined that plaintiff could not return to past work.  At Step Five, the ALJ found that from August 19, 2015 through March 21, 2018, plaintiff's

5

impairments did not prevent her from performing work that existed in significant numbers in the national economy. Thus, plaintiff was not disabled during that period. (Tr. 26-28, 62.) Beginning March 22, 2018, however, there were no jobs that plaintiff could perform, and therefore plaintiff became disabled on that date. (Tr. 28-29.)

## IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings apply the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If

the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## V.  DISCUSSION

Plaintiff argues the ALJ erred in finding she would not have any absences from work in determining her RFC. She argues that the record evidence demonstrates that her medical care and need for frequent absences would interfere with her performing full-time work as described in the ALJ's RFC finding. She argues the ALJ erred in applying a standard that medical care must be proven as "medically appropriate and necessary." She argues the ALJ should have found her disability began earlier than March 22, 2018 in light of her need for frequent absences. The Court disagrees.

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* Nor is an ALJ limited to considering

medical evidence exclusively when evaluating a claimant's RFC. *Cox*, 495 F.3d at 619. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

In this case, in assessing plaintiff's symptoms, the ALJ considered plaintiff's allegations that she had to inject insulin every hour and could not work due to hand problems and arm, back, leg, and stomach pain. To evaluate these allegations, the ALJ considered plaintiff's medical treatment, her medications, examiners' objective findings, and other evidence. *See* 20 C.F.R. § 404.1529(c) (listing factors SSA will consider when evaluating the claimant's symptoms). After the administrative hearing, the ALJ sought a medical opinion from Dr. Murphy, who in his July 2018 medical source statement concluded that plaintiff could perform a full range of sedentary work. (Tr. 3306-13.)

The ALJ concluded, consistent with Dr. Murphy's assessment, that plaintiff had the RFC to perform a limited range of sedentary work. (Tr. 21.) *See* 20 C.F.R. § 404.1567(a) (describing sedentary exertion). However, for the period beginning March 22, 2018, the ALJ found plaintiff would be off-task for 15% of the workday in order to prepare and administer hourly insulin. (Tr. 26, 3083.) As this off-task limitation precluded work, plaintiff was disabled from March 22, 2018 onward. (Tr. 28-29, 63.)

Plaintiff argues her RFC finding should have included a limitation that she would be absent from work due to her impairments and treatments. In support, she notes that she received medical attention on 173 days during a 33-month period that overlaps with the relevant period. Plaintiff argues she would have been absent from the workplace on each of these dates, and thus could not maintain employment.

The ALJ found that plaintiff's total days of treatment did not establish a need for frequent absences from work. (Tr. 22, 26.) Plaintiff's argument assumes that she could not schedule appointments around her work hours and that all the treatment was appropriate and medically necessary. Thus, the number of days that plaintiff received medical treatment did not establish disability absent evidence that treatment was medically necessary and required her to miss work. (Tr. 22, 26.) The ALJ ultimately found insufficient support for

plaintiff's claim that her impairments would cause frequent absences. (Tr. 26.) It is plaintiff's burden to provide evidence establishing disability. *See Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). As the record supports the ALJ's analysis, the ALJ's finding is affirmed.

Plaintiff cites three cases from this Circuit in support of her claim that she was disabled due to absences. While these cases demonstrate that impairment related absences can preclude employment, they do not suggest that a claimant can simply add up days of treatment to establish an absence rate. In *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006), the Eighth Circuit found that the claimant was disabled because he met a listing. The court observed in a footnote that the claimant's past employment was consistent with disability because he was frequently absent from the job. *Id.* at 901 n.2. However, because the claimant was disabled at Step Three, the case did not hinge on RFC.

The other two cases address RFC, although both cases involve treating physician opinions supporting frequent absences. In *Ross v. Apfel*, 218 F.3d 844 (8th Cir. 2000), the claimant's treating physician issued several opinions supporting disability, including an opinion that the claimant could work only four hours per day. *See id.* at 848. The Eighth Circuit reasoned that these opinions, and other evidence such as plaintiff's history of frequent emergency room visits for severe pain, warranted a finding that the claimant could not meet attendance requirements of competitive employment. *Id.* at 850. Similarly in *Baker v. Apfel*, 159 F.3d 1140 (8th Cir. 1998), the claimant's treating physician opined that he would miss "a great deal of work." *Id.* at 1146. The Eighth Circuit found that the doctor's opinion, plaintiff's history of frequent injections for migraines, and his pattern of absences from class, warranted an attendance related RFC limitation. *Id.*

Here, unlike *Ross* or *Baker,* plaintiff did not provide any medical opinions indicating her impairments would result in absences from work. Although plaintiff's medical history included many emergency room visits or hospitalizations, which could feasibly result in absences, plaintiff does not differentiate between these visits and routine care. Rather,

9

plaintiff simply adds up the number of days that she received treatment and then construes each treatment day as an absence.

For example, plaintiff's treatment dates include routine visits to primary care physician Dr. Ostrom who saw plaintiff two to four times per month and approximately 68 times overall.  (Tr. 573-76, 582-86, 594, 598-99, 604-05, 619-20, 632-38, 643-46, 661, 700-01, 706-07, 764-65, 770-72, 775, 780-81, 783-85, 788-89, 1850, 2133-38, 2152-90, 2193-2206, 2230-37, 2250-54, 2258-60, 2274-78.)   Likewise, plaintiff's list includes diabetes appointments with nurse practitioner Ms. Gant, which occurred twice per month from January through May 9, 2016.  (Tr. 584, 587-88, 592-93, 595-97, 620, 628-30, 635-36, 644-45.)  Contrary to plaintiff's claims, it is not clear that these appointments had to occur this frequently, and during work hours, and would result in full day absences from work.

Plaintiff's list of treatment dates also does not differentiate treatment based on impairments, and therefore includes days when she received care for temporary or short-term impairments such as her adnexal mass and torn calf muscle.  (Tr. 19, 1848-49.) However, impairments that resolve in less than 12 months cannot support a finding of disability.  *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509 (an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months").

Moreover, plaintiff attempts to establish a need for medical absences by focusing on an atypical period in the record.  For example, plaintiff notes that she required extensive treatment for nausea and vomiting from December 2015 through March 2016.  While plaintiff did require extensive care during this period, this period did not last 12 months and is not representative of her typical level of care during the relevant period.  Specifically, plaintiff did not require fluid infusions or frequent emergency room visits outside of this period. The ALJ properly determined that the record did not support an RFC limitation for frequent absences. Plaintiff does not point to any medical opinions to support such a limitation, nor does she point to any other evidence to meet her burden of explaining why each day of medical treatment should count as a medically necessary absence.

## VI.  CONCLUSION

      For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

                                                        /s/ David D. Noce
                                      **UNITED STATES MAGISTRATE JUDGE**

**Signed on October 9, 2020.**